IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

FILED
2026 APR 13 PM 12:30
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

**ISAAC BALDUF and AMY GREEN,**Case No. ______________

*Plaintiffs,*

v.

**ONITY MORTGAGE CORPORATION f/k/a**
**PHH MORTGAGE SERVICES,**
**MACKIE WOLF ZIENTZ & MANN, P.C., and**

*Defendants.*

---

**COMPLAINT FOR VIOLATION OF RESPA, FDCPA, AND VA LOAN SERVICING**

---

**REQUIREMENTS AND EMERGENCY REQUEST FOR TEMPORARY RESTRAINING ORDER**

Plaintiffs Isaac Balduf and Amy Green, appearing pro se, allege as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Isaac Balduf is a disabled United States Marine Corps veteran receiving service-connected disability compensation of $2,493 per month, as confirmed by his VA Certificate of Eligibility, Reference No. 23670637, issued March 6, 2026. Plaintiff Amy Green is his spouse and co-borrower. Both Plaintiffs reside at 918 Blackwood Rd, Springfield, Tennessee 37172, which is the subject property of this action.

2. Defendant PHH Mortgage Services ("PHH") is a mortgage servicer with its principal office located at PO Box 24738, West Palm Beach, Florida 33416. PHH services Plaintiffs'

mortgage loan, Account No. 7913125907. PHH has since rebranded as Onity Mortgage Corporation; both names refer to the same legal entity and are used interchangeably throughout this Complaint.

3. Defendant Mackie Wolf Zientz & Mann, P.C. ("Mackie Wolf") is a law firm located at 725 Cool Springs Blvd, Suite 140, Franklin, Tennessee 37067. Mackie Wolf was retained by PHH as foreclosure counsel and is the substitute trustee attempting to conduct a foreclosure sale of Plaintiffs' home.

4. This Court has subject matter jurisdiction under 28 U.S.C. §1331 (federal question). Plaintiffs' claims arise under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §2601 et seq.; the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692 et seq.; and VA loan servicing requirements under 38 U.S.C. §3714 and 38 C.F.R. §36.4350.

5. Venue is proper in this District under 28 U.S.C. §1391(b) because the subject property is located within this District and a substantial part of the events giving rise to this action occurred here.

**FACTUAL BACKGROUND**

***A. The Loan and Prior Modification***

6. Plaintiffs are the borrowers on a VA-guaranteed home loan, VA Case No. LH0881784 / 020-206088-1-784, secured by their primary residence at 918 Blackwood Rd, Springfield, Tennessee 37172.

7. In July 2024, the investor on Plaintiffs' loan was Government National Mortgage Association ("Ginnie Mae"), as confirmed in a decision letter from CMG Mortgage, Inc. dated July 12, 2024.

8. On or about March 5, 2025, effective April 1, 2025, Plaintiffs executed a loan modification agreement with Freedom Mortgage Corporation ("Freedom"), the then-servicer. The modification set a new fixed interest rate of 2.500% — the VASP program rate — confirming that the U.S. Department of Veterans Affairs had purchased Plaintiffs' loan through the VA Servicing Purchase (VASP) program, making the VA the investor of record. The modification agreement expressly stated a modified monthly payment consisting of $8,827.20 in principal and interest and $4,127.72 in escrow, for a total stated payment of $12,954.92 per month. However, Freedom never collected the $4,127.72 escrow amount set forth in the modification agreement. Instead, Freedom charged Plaintiffs an escrow component of only $1,495.72 per month — a figure based on a projected annual insurance premium of approximately $13,908.81 — resulting in an actual collected monthly payment of $10,322.92 (mortgage + escrow). This escrow figure was wholly insufficient to cover Plaintiffs' USAA homeowner's insurance premium of $20,084.10, which Freedom knew was due for renewal on approximately April 24, 2025. Additionally, Plaintiffs were never provided written disclosure notice of this conversion to the VASP program, which materially changed the character of their loan and their rights thereunder.

9. On May 30, 2025, only two months after the modification took effect, Freedom conducted a post-modification escrow analysis. This analysis was defective and violated 12 C.F.R. §1024.17(c)(7), which requires a servicer to use the most recent tax and insurance data available when conducting an escrow analysis. At the time of the March 2025 modification, Freedom held Plaintiffs' USAA homeowner's insurance policy on file and had actual

knowledge that the annual premium of $20,084.10 was due for renewal on approximately April 24, 2025 — within weeks of the modification's April 1, 2025 effective date. Despite this knowledge, Freedom's escrow analysis projected an annual premium of only $13,908.81 — a figure that was flatly contradicted by the data Freedom already possessed. As a result of this defective analysis, Freedom issued a shortage notice and raised Plaintiffs' monthly payment from $10,322.92 to $11,831.11 — an increase of $1,508.19 per month — without Plaintiffs' agreement and without correcting the underlying regulatory violation. This foreseeable and preventable payment shock was the direct and proximate cause of the payment difficulties that led to the default cited by PHH as the basis for denial and foreclosure.

### B. *PHH's Unlawful Servicing Conduct*

9. Effective October 9, 2025, loan servicing was transferred from Freedom to Defendant PHH. PHH's transfer notice did not notify Plaintiffs that a complete Mortgage Assistance Application was pending with Freedom, nor did PHH take any steps to adopt or continue Freedom's pending loss mitigation evaluation.

9. At the time of transfer, Plaintiffs had an active, facially complete Mortgage Assistance Application ("MAA") pending with Freedom. Freedom's August 20, 2025 letter expressly stated that it "cannot make the first notice or filing to commence or initiate the foreclosure process," confirming the MAA was active. Under 12 C.F.R. §1024.41(k), PHH was required to adopt this pending application and continue the loss mitigation review without interruption.

9. PHH did not adopt Freedom's pending MAA. Instead, PHH restarted the entire loss mitigation process on October 29, 2025, twenty days after the transfer, requiring Plaintiffs to

re-submit documentation already on file. This unlawful restart violated 12 C.F.R. §1024.41(k) and added approximately five months of unnecessary delay to the loss mitigation timeline.

9. PHH required Plaintiffs to restart the loss mitigation process a second time under PHH's watch in December 2025, assembling and submitting all required documentation by a stated deadline of January 18, 2026. Plaintiffs timely submitted all required documentation by email to PHH's designated submission address on January 18, 2026. PHH then rejected this timely submission on the basis that its internal processing requirements mandated receipt of documents approximately five business days before the stated deadline — an internal requirement PHH had never disclosed to Plaintiffs (Plaintiffs have requested phone records that support the evidence of this, however these have not been released to the Plaintiffs by the Defendant at this time). PHH agreed to restart the process a third overall time, further extending the loss mitigation delay and causing additional accumulation of fees, charges, and arrears during the extended period.

9. On February 9, 2026, while Plaintiffs' MAA was still pending, PHH retained Defendant Mackie Wolf as foreclosure counsel. PHH's own February 23, 2026 letter then confirmed the MAA was complete as of February 13, 2026 and under review. The retention of foreclosure counsel while a complete loss mitigation application was pending constitutes prohibited dual tracking under 12 C.F.R. §1024.41(f)(2) and §1024.41(g).

9. Plaintiffs' application was confirmed complete on February 13, 2026, triggering PHH's obligation to evaluate it within 30 days under 12 C.F.R. §1024.41(c)(1). The evaluation deadline was March 15, 2026. PHH issued its denial on March 16, 2026 — one day past the regulatory deadline.

9. PHH's March 16, 2026 denial states two grounds: (1) the account does not meet the repayment plan delinquency requirement, without specifying which requirement or how the account fails — in violation of 12 C.F.R. §1024.41(d), which requires that a denial state "the specific reasons for the servicer's determination for each" loss mitigation option evaluated; and (2) the account was previously modified and became 60 or more days delinquent within 12 months — a ground that is itself the direct and foreseeable product of Freedom's own regulatory violations and PHH's unlawful delay. The delinquency within 12 months of modification was caused by two independent servicer failures: first, Freedom Mortgage's defective escrow analysis in violation of 12 C.F.R. §1024.17(c)(7), which required Freedom to use "the most recently known" insurance data when setting escrow at modification but instead applied a knowingly understated projection, resulting in a $372.57 per month escrow surcharge imposed on Plaintiffs without agreement; and second, PHH's five-month unlawful delay in violation of 12 C.F.R. §1024.41(k), which required PHH to adopt Freedom's pending, complete Mortgage Assistance Application at the time of transfer rather than restart the process from scratch and impose additional months of compounding arrears. A servicer may not cite as grounds for denial a delinquency that its own statutory violations caused.

9. PHH's denial letter confirms on its face: "According to our records, the owner of your loan is: United States Department of Veterans Affairs." Despite this acknowledgment, PHH's denial evaluated only two programs and offered only Short Sale and Deed-in-Lieu of Foreclosure — exit options that result in loss of the home. PHH did not evaluate or offer a single VA home retention option, did not consult the VA Regional Loan Center, and did not offer VASP re-evaluation, all of which are required for VA-owned loans under 38 C.F.R. §36.4350 and the VA Servicer Handbook M26-4.

### *C. The Imminent Foreclosure Sale and Absence of Written Suspension Confirmation*

9. A foreclosure sale of Plaintiffs' home is currently scheduled, with a reinstatement deadline of May 1, 2026. Per a phone call on April 9, 2026 with the Account Manager Representative with PHH (ID# XCH Name: Chenae), she confirmed that the Plaintiff's account is still in active foreclosure.

9. PHH's own March 16, 2026 denial letter states: "No foreclosure sale will be conducted, and the home will not be lost during this 14-day period [the appeal period]." Plaintiffs filed a timely written appeal on March 20, 2026.

9. Plaintiffs sent a formal written FDCPA dispute letter to Defendant Mackie Wolf on March 20, 2026 via certified mail, within the 30-day dispute period. Upon receipt, Mackie Wolf is required to cease all collection activity, including foreclosure proceedings, until the debt is verified.

9. The previously noticed sale date of April 19, 2026 was communicated as cancelled via a written email from Carla Butler, a foreclosure specialist at Mackie Wolf, dated March 26, 2026 (Ex. J). However, neither PHH nor Onity Mortgage Corporation has provided any written confirmation that Plaintiffs' home has been removed from the foreclosure process or that either Defendant is working toward a mutual resolution with Plaintiffs. Plaintiffs face imminent, irreversible loss of their primary residence absent immediate judicial intervention.

## **<u>CLAIMS FOR RELIEF</u>**

### **COUNT I — VIOLATIONS OF RESPA, 12 U.S.C. §2605(f)**

(Against Defendant PHH Mortgage Services / Onity Mortgage Corporation)

9. **Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.** PHH, as successor servicer under 12 C.F.R. §1024.41(k), is liable for all regulatory violations committed by Freedom Mortgage Corporation that were unresolved at the time of the October 9, 2025 servicing transfer, in addition to PHH's own independent violations set forth below.

9. PHH violated 12 C.F.R. §1024.41(h)(4) by continuing foreclosure proceedings while Plaintiffs' timely written appeal of the March 16, 2026 denial was pending. Under §1024.41(h)(4), a servicer "shall not" commence or advance foreclosure proceedings while a borrower's appeal is pending. PHH acknowledged the 14-day appeal window in its own March 16, 2026 denial letter, and Plaintiffs filed their written appeal on March 20, 2026 — within that window. Any foreclosure sale proceeding while Plaintiffs' appeal remains unanswered — including any sale triggered by the May 1, 2026 reinstatement deadline — is a direct, continuing violation of this bright-line prohibition.

9. PHH violated 12 C.F.R. §1024.41(k) by failing to adopt Freedom's facially complete, pending MAA and restarting the loss mitigation process from scratch.

9. PHH violated 12 C.F.R. §1024.41(f)(2) and §1024.41(g) by retaining foreclosure counsel while a complete loss mitigation application was pending and under review.

9. PHH violated 12 C.F.R. §1024.41(c)(1) by issuing its denial one day after the 30-day evaluation deadline.

9. PHH violated 12 C.F.R. §1024.41(d) by issuing a deficient denial that did not state specific reasons for each program and failed to evaluate all loss mitigation options available to borrowers on a VA-owned VASP loan.

9. Freedom Mortgage Corporation violated 12 C.F.R. §1024.17(c)(7) by conducting a defective escrow analysis that knowingly projected an annual insurance premium of $13,908.81 when Freedom already held on file Plaintiffs' USAA policy confirming the actual annual premium was $20,084.10 — due for renewal April 24, 2025. This artificially low projection caused Freedom to set an escrow payment of $1,495.72 per month that was insufficient to cover the actual premium, resulting in a post-analysis shortage and a payment increase from $10,322.92 to $11,831.11 — an increase of $1,508.19 per month — that directly and proximately caused the financial hardship leading to the default cited by PHH as its basis for denial and foreclosure. PHH, as successor servicer, is liable for Freedom's §1024.17(c)(7) violation under 12 C.F.R. §1024.41(k), which requires a successor servicer to adopt and honor the obligations of the prior servicer.

9. PHH's violations have caused Plaintiffs actual damages including, without limitation, accumulation of additional arrears, fees, and charges during the unlawfully extended loss mitigation period, emotional distress, and the imminent loss of their primary residence.

9. PHH's violations entitle Plaintiffs to actual damages, statutory damages up to $2,000 per violation, costs, and attorneys' fees under 12 U.S.C. §2605(f).

**COUNT II — VIOLATIONS OF FDCPA, 15 U.S.C. §1692 et seq.**

(Against Defendant Mackie Wolf Zientz & Mann, P.C.)

9. **Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.**

9. Mackie Wolf is a "debt collector" as defined by 15 U.S.C. §1692a(6). The mortgage debt is a "debt" as defined by 15 U.S.C. §1692a(5).

9. Mackie Wolf was retained and sent its FDCPA notice on February 9, 2026, while PHH's own records confirmed a complete loss mitigation application was pending review. The foreclosure referral that created Mackie Wolf's engagement was itself improper under RESPA's dual tracking prohibition.

9. Plaintiffs timely disputed the debt in writing on March 20, 2026. Under 15 U.S.C. §1692g(b), upon receipt of this written dispute, Mackie Wolf must cease all collection activity until the debt is verified and verification is provided to Plaintiffs. Proceeding with any foreclosure sale before providing debt verification constitutes a willful violation of 15 U.S.C. §1692g(b).

9. Mackie Wolf's violations entitle Plaintiffs to actual damages, statutory damages up to $1,000, costs, and attorneys' fees under 15 U.S.C. §1692k.

## COUNT III — VIOLATION OF VA LOAN SERVICING REQUIREMENTS

(Against Defendant PHH Mortgage Services / Onity Mortgage Corporation)

9. **Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.**

9. The loan is owned by the U.S. Department of Veterans Affairs, as confirmed by PHH's own March 16, 2026 denial letter. PHH is required under 38 C.F.R. §36.4350 and the VA Servicer Handbook M26-4 to exhaust the full VA Home Retention Waterfall before issuing a denial or initiating foreclosure on a VA-owned loan.

9. PHH failed to evaluate or offer any VA home retention option, did not seek VA authorization for denial, and did not offer VASP re-evaluation. PHH proceeded directly to non-retention exit options (short sale and deed-in-lieu) without completing the mandatory VA waterfall, in violation of VA servicing requirements.

9. Plaintiff Isaac Balduf is a disabled veteran whose VA housing benefit entitlement and primary residence are at risk due to PHH's failure to comply with VA servicing requirements.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Issue a Temporary Restraining Order immediately halting any foreclosure sale of 918 Blackwood Rd, Springfield, Tennessee 37172, including any sale scheduled on or around April 19, 2026 or thereafter, pending a hearing on Plaintiffs' motion for a preliminary injunction;

2. Issue a Preliminary Injunction maintaining the stay of foreclosure proceedings pending resolution of this action on the merits;

3. Order PHH to re-evaluate Plaintiffs' loss mitigation application in full compliance with 12 C.F.R. §1024.41 and all applicable VA servicing requirements, including the full VA Home Retention Waterfall and VASP re-evaluation;

4. Order PHH to conduct a corrected escrow analysis in compliance with 12 C.F.R. §1024.17 and to waive all fees, penalties, and charges accumulated during the period of PHH's RESPA violations;

5. Award Plaintiffs actual damages, statutory damages, costs, and attorneys' fees under 12 U.S.C. §2605(f) and 15 U.S.C. §1692k; and

6. Grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues so triable, including but not limited to all claims for actual damages, statutory damages, and any other issues triable as of right under the Seventh Amendment to the United States Constitution.

Respectfully submitted,

Isaac Balduf, Pro Se Plaintiff
918 Blackwood Rd, Springfield, TN 37172

Amy Green, Pro Se Plaintiff
918 Blackwood Rd, Springfield, TN 37172
amy@mamayahealth.com

Dated: April 10, 2026



Case 3:26-cv-00449 Document 1 Filed 04/13/26 Page 12 of 12 PageID #: 12